# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LISA CASEY,

        *Plaintiff*,

v.

UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS
CITY, KANSAS, As Representative of
Kansas City Board of Public Utilities,

        *Defendant*.

Case No. 24-CV-2005-EFM

## MEMORANDUM AND ORDER

Before the Court is Defendant Unified Government of Wyandotte County's Partial Motion to Dismiss (Doc. 9). Defendant seeks to dismiss Plaintiff Lisa Casey's hostile work environment claim, retaliation claim, and race discrimination claims occurring prior to the statute of limitations. Because Plaintiff's Amended Complaint does not plausibly plead any of these claims, the Court grants Defendant's Partial Motion to Dismiss.

### I.      Factual and Procedural Background[1]

In 1994, the Kansas City Board of Public Utilities ("BPU") hired Plaintiff Lisa Casey—an African American female—to work as a Plant Relief Operator. From January 2012 to the present, Plaintiff has worked as a Service Dispatcher for the BPU. Defendant represents the BPU in this action.

---

[1] The facts in this section are taken from Plaintiff's Amended Complaint unless otherwise cited.

Throughout Plaintiff's career, she applied for and was denied multiple positions within the BPU. Some of these positions include Water Quality Technician, Supervisor of Fuel Handlers, Superintendent of Operations, Supervisor of Water Distribution Meters, Relief Operator, Water Distribution Maintenance Planner/Scheduler, Lead Storeroom, Truck Driver, and Dispatcher. Plaintiff indicates that she applied for other positions beyond this list, but she does not specifically mention them in her Amended Complaint. Plaintiff applied for the Water Quality Technician position in August 2014, the Water Distribution Main Planner/Scheduler and Lead Storeroom positions around June 2022, and the Dispatcher position in July 2023. As for the remaining named positions, Plaintiff provides no timeframe.

Plaintiff elaborates only on the circumstances surrounding the Water Distribution Main Planner/Scheduler and Lead Storeroom applications. Though she was offered an interview for both positions, Plaintiff turned down the Lead Storeroom interview in favor of the Water Distribution Main Planner/Scheduler interview. Plaintiff did not receive the Water Distribution Main Planner/Scheduler position. Instead, the BPU hired the interim Chief Operating Officer's spouse. Plaintiff inquired about this hiring decision's interplay with the BPU's nepotism policy but was told to file a grievance because "that's what [she was] good at." Plaintiff does not explain who said this to her or what role they had at the BPU.

Apart from these denied positions, Plaintiff also claims to have experienced differential treatment between herself and Caucasian employees. Plaintiff cites several instances where she worked less overtime than Caucasian employees in 2016, January 2021, June 2023, and January 2024. However, Plaintiff mentions only one instance of the BPU denying her request to work overtime, which occurred on January 2, 2021.

When she first experienced this alleged differential treatment, Plaintiff complained to union representative Eric Williams in February 2017 about having less overtime than a Caucasian day dispatcher. Plaintiff implies that she was harassed in response to making this employment complaint. Without providing any information about when the harassment occurred or who Stephen Green is, Plaintiff claims that Green harassed her by changing where she could park her car and by writing her up for using offensive language on a phone call. Plaintiff also asserts that she made numerous complaints both internally and externally and was subsequently retaliated for making these complaints. Plaintiff does not mention who she made these complaints to or what she specifically complained about.

Lastly, Plaintiff claims that in the summer of 2023 she witnessed insubordination from non-minority employees whose conduct was "worse than [hers]," yet those employees were not disciplined. She also witnessed that non-minority employees with drinking problems were not fired even though their employment requires them to drive a vehicle.

On January 5, 2024, Plaintiff filed her first Complaint, bringing § 1981 claims of hostile work environment, retaliation, and race discrimination against Defendant. On February 8, 2024, Defendant filed a motion for a more definite statement. The Court granted this motion, requiring Plaintiff to amend her Complaint. On March 19, 2024, Plaintiff filed her Amended Complaint. Two days later, Defendant moved to partially dismiss Plaintiff's Amended Complaint. Plaintiff responded on April 4, 2024, and Defendant replied on April 16, 2024.

## II.    Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted.[2] Upon such motion, the court

---

[2] Fed. R. Civ. P. 12(b)(6).

must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[3] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[4] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well the grounds on which each claim rests.[5] Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions.[6] Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities.[7] If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"[8]

### III.    Analysis

Plaintiff alleges 42 U.S.C. § 1981 claims of hostile work environment, race discrimination, and retaliation against Defendant.[9] Defendant seeks to dismiss the hostile work environment and retaliation claim, arguing the Plaintiff fails to state a claim for either. Moreover, Defendant argues

---

[3] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[5] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[6] *Iqbal*, 556 U.S. at 678–79.

[7] *See id.* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." (citations omitted)).

[8] *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

[9] Although Plaintiff does not bring any of her claims under Title VII, the Court relies on various authorities addressing hostile work environment, discrimination, and retaliation claims in both the § 1981 context and the Title VII context. This is because claims asserted under § 1981 and Title VII share the same standards. *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) ("[T]he principles set forth in Title VII retaliation cases apply with equal force in § 1981 retaliation cases."); *Mack v. J.M. Smuckers Co.*, 631 F. Supp. 3d 1018, 1023 (D. Kan. 2022), *aff'd*, 2023 WL 5217705 (10th Cir. Aug. 15, 2023), *cert. denied*, 144 S. Ct. 589 (2024) ("The substantive standards for a § 1981 and a Title VII claim of a hostile work environment are . . . the same."); *Hill v. Mem'l Drive United Methodist Church*, 2018 WL 991542, at *3 (N.D. Okla. Feb. 20, 2018) ("the Court considers plaintiff's § 1981 claim under the same standards applicable to Title VII claims of racial discrimination.").

for partial dismissal of Plaintiff's race discrimination claim, arguing that conduct occurring before January 5, 2020, falls outside the four-year statute of limitations and is thus barred from review. The Court will address each of Plaintiff's claims in turn.

### A.  Hostile Work Environment

Defendant argues that Plaintiff fails to allege a hostile work environment claim. Although Plaintiff's Amended Complaint does not directly state which conduct forms this claim, her Response indicates that being denied various positions at the BPU and being treated differently compared to the BPU's Caucasian employees amount to a hostile work environment. Furthermore, Plaintiff claims that these forms of harassment were racially motivated. Based on these allegations, the Court must determine if Plaintiff has sufficiently pled a hostile work environment claim.

The Tenth Circuit recognizes hostile work environment claims under § 1981.[10] A plaintiff bringing a hostile work environment claim must plead that "(1) [s]he is a member of a protected group; (2) [s]he was subject to unwelcome harassment; (3) the harassment was based on race; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of plaintiff's employment and created an abusive work environment."[11] Though an action may not be dismissed for failing to establish a prima facie case, failure to allege facts supporting the elements of a claim warrants dismissal.[12] Here, Plaintiff fails to plausibly allege factual allegations inferring severe or pervasive racial harassment.

---

[10] *Witt v. Roadway Express*, 136 F.3d 1424, 1431–32 (10th Cir. 1998).

[11] *Mack v. J.M. Smuckers Co.*, 2023 WL 5217705, at *10–11 (10th Cir. Aug. 15, 2023) (citing *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015)).

[12] *See, e.g.*, *Strauss v. Angie's List, Inc.*, 2018 WL 5722561, at *14 (D. Kan. Nov. 1, 2018) ("Because Plaintiff . . . has failed to plausibly allege an essential element of his remaining . . . claims, they are also dismissed."); *see also Ngiendo v. Sedgwick Claims Mgmt. Servs., Inc.*, 2013 WL 5304049, at *3 (D. Kan. Sept. 20, 2013) ("Even construed liberally under the pro se litigant standards, Plaintiff fails to plead all the requisite elements of an ADA claim in order to withstand dismissal.").

Hostile work environment claims are "composed of a series of separate acts that collectively constitute one unlawful employment practice."[13] They can occur "over a series of days or perhaps years."[14] In contrast, a discrete act is "a single act of harassment [that] may not be actionable on its own."[15] The failure to promote and the denial of overtime are both discrete acts.[16] Accordingly, courts treat conduct forming a hostile work environment and discrete acts of discrimination differently.[17] Despite their differences, however, time-barred discrete acts may be used as background evidence for hostile work environment claims.[18] Consequently, the Court must determine if the discrete acts and other conduct in the Amended Complaint plausibly allege the elements of a racially hostile work environment claim.

"An employer creates a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[19] "Severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes

---

[13] *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) (further citations and quotations omitted).

[14] *Id.* at 1139 (further citations, quotations, and brackets omitted).

[15] *Id.* (further citations and quotations omitted).

[16] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *EEOC v. San Juan Coal Co.*, 2010 WL 11627000, at *4–5 (D.N.M. Jan. 26, 2010) (recognizing that the denial of overtime is a discrete act); *Tillman v. S. Wood Preserving of Hattiesburg, Inc.*, 377 F. App'x 346, 349 (5th Cir. 2010) ("the denials of weekend overtime qualify as such discrete acts").

[17] *Fulcher v. City of Wichita*, 2009 WL 6832587, at *3 (D. Kan. Sept. 11, 2009), *aff'd*, 387 F. App'x 861 (10th Cir. 2010) (noting that hostile work environment claims are different than discrete discriminatory or retaliatory acts).

[18] *Morgan*, 536 U.S. at 113.

[19] *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 851 (10th Cir.2007)) (internals quotations omitted).

with an employee's work performance.'"[20] No single factor is determinative,[21] and, importantly, not all workplace harassment is sufficiently severe or pervasive.[22] For claims of a racially hostile work environment, "the showing of pervasiveness must be 'more than a few instances of racial enmity.'"[23] "Casual or isolated manifestations of discriminatory conduct, such as a few sexual comments or slurs, may not support" a hostile work environment cause of action.[24] "Instead, 'there must be a steady barrage of opprobrious racial comments.'"[25] Relevantly, the harassment forming a hostile work environment claim must be sufficiently related.[26] Conduct may be sufficiently related if it includes the same type of employment actions, if it involves the same perpetrators, and if the acts themselves are frequent.[27]

Plaintiff raises several examples in an attempt to bolster her hostile work environment claim. First, she alleges that the BPU failed to promote her to various positions over the years. However, Plaintiff never alleges that someone of a different race received a position that she applied for. Plaintiff's only detailed account of a failure to promote involved the Scheduler position. Within this account, Plaintiff contends that the selected applicant received the Scheduler position because of nepotism—not because of racial discrimination. Thus, Plaintiff's failure to promote allegations do not support her racially hostile work environment claim.

---

[20] *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)) (further citations omitted).

[21] *Smith v. Nw. Fin. Acceptance, Inc.*, 129 F.3d 1408, 1413 (10th Cir. 1997).

[22] *Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1366 (10th Cir. 1997).

[23] *Goddard v. Artisan Earthworks, LLC*, 2010 WL 3909834, at *5 (D. Kan. Oct. 1, 2010) (quoting *Bloomer v. United Parcel Serv., Inc.*, 94 F. App'x 820, 825 (10th Cir. 2004)).

[24] *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996).

[25] *Hare v. Donahoe*, 608 F. App'x 627, 631 (10th Cir. 2015) (quoting *Chavez*, 397 F.3d at 832).

[26] *Morgan*, 536 U.S. at 120.

[27] *Id.*; *Tademy*, 614 F.3d at 1139; *see also Filer v. Donley*, 690 F.3d 643, 647–48 (5th Cir. 2012) (unrelated allegations cannot be aggregated into a timely hostile environment claim).

Next, Plaintiff alleges that she was treated differently than Caucasian employees. Specifically, Plaintiff contends that she worked less overtime hours than other Caucasian employees and that she was disciplined for a minor incident while other Caucasian employees were not disciplined for more serious incidents.

Plaintiff's differential treatment claims are based on facially neutral conduct.[28] While facially neutral conduct can support a finding of racial animus, it only does so when viewed in the context of other overt, racially discriminatory conduct.[29] Plaintiff fails to allege any such conduct. She does not mention if her managers made inappropriate racial comments, racial slurs, or even neutrally racial language. She makes no indication that she received any threats or perceived aggression from anyone in the workplace. Plaintiff also fails to allege if the same managers were responsible for this differential treatment, suggesting that this conduct is not sufficiently related. Thus, Plaintiff has failed to plausibly allege that the difference between her overtime hours and Caucasian employees' overtime hours created a severe or pervasive workplace "permeated with discriminatory intimidation, ridicule, and insult."[30]

Additionally, Plaintiff fails to allege that the discipline she experienced was racially motivated. While Plaintiff alleges that Caucasian employees were not disciplined for worse behavior, Plaintiff does not allege that these employees were supervised by the same managers or that these employees were in similar work positions as Plaintiff. As such, the Court questions if this behavior is sufficiently related, but even if it is, this behavior does not present as severe or pervasive harassment based on race. Plaintiff contends that someone named Stephen Green

---

[28] *See Scott v. HAMM, Inc.*, 2023 WL 2498927, at *4 (D. Kan. Mar. 14, 2023) (recognizing that differential treatment is an example of facially neutral conduct).

[29] *Lounds*, 812 F.3d at 1224 (citing *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012)).

[30] *See Morris*, 666 F.3d at 664.

harassed her by, "[a]mong other things, [changing] where Plaintiff could park her car, and [writing up Plaintiff] for offensive language on a phone call." Neither of these instances suggest an undertone of racial hostility. Furthermore, Plaintiff does not allege that Green made any racial comments or slurs. This Court cannot theorize what "other things" Plaintiff was subjected to, and "Plaintiff cannot simply allege that she was required to work in a racially hostile work environment without at least setting forth some factual allegations to support such a claim."[31] Overall, nothing presented in the Amended Complaint suggests overt, racial discrimination that is sufficiently severe or pervasive. Thus, viewed in the light most favorable to the Plaintiff, this pleaded conduct is at most general harassment, and "[g]eneral harassment if not racial . . . is not actionable."[32]

Therefore, Plaintiff fails to plausibly plead that the alleged harassment she experienced was based on race and sufficiently severe or pervasive. Accordingly, the Court dismisses Plaintiff's hostile work environment claim.

## B.    Retaliation

The Court next addresses whether Plaintiff plausibly pleads a retaliation claim. Defendant argues that Plaintiff's employment complaints neither plausibly allege a protected activity nor a causal connection necessary to support her retaliation claim. To allege a prima facie case of retaliation, a plaintiff must plead that "(1) . . . she engaged in protected opposition to discrimination; (2) . . . she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action."[33] The Court considers each element to determine whether Plaintiff's retaliation claim is plausible.

---

[31] *See Goddard*, 2010 WL 3909834, at *3.

[32] *Williams v. Aeroflex Wichita, Inc.*, 2023 WL 2395994, at *3 (10th Cir. Mar. 8, 2023) (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).

[33] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1234 (10th Cir. 2000) (citing *Perry v. Woodward*, 199 F.3d 1126, 1141 (10th Cir. 1999)).

*1.     Protected activity*

Plaintiff argues that she engaged in a protected activity twice: first, in a statement of general complaints (the "General Complaints"), and second, in a complaint to union representative Eric Williams (the "Williams Complaint"). Defendant argues that the Williams Complaint fails to provide sufficient grounds for a protected activity because Williams was not formally designated to receive employment complaints. In response, Plaintiff asserts that the Court cannot consider whether Williams was formally designated, but regardless, the General Complaints are sufficient to plead her retaliation claim. The Court addresses the General Complaints and the Williams Complaint to determine whether she has sufficiently pled a protected activity.

a.     The General Complaints

Plaintiff asserts that Defendant's argument ignores the following allegation: "After Plaintiff filed multiple complaints, internally and externally, she was retaliated against due to making such complaints." Plaintiff maintains that since she alleges "multiple complaints," the Court should deny the motion to dismiss with respect to the retaliation claim. Thus, the Court must determine if this statement of "multiple complaints" nudges "'across the line from conceivable to plausible' in order to survive a motion to dismiss."[34]

Plaintiff's statement of other "multiple complaints" fails to satisfy the Rule 12(b)(6) plausibility standard. Plaintiff does not elaborate on the factual content of these complaints, when she made these complaints, or to whom she made these complaints. The Court does not know if these complaints refer to Plaintiff's overtime concerns, the denial of promotions, differential treatment, or something else entirely, and it refuses to engage in speculation.[35] This factual content

---

[34] *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).

[35] *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the *speculative* level on the assumption that all the allegations in the complaint are true." (emphasis added) (further citations and quotations omitted)).

should be available to Plaintiff, yet she fails to provide it.[36] Without this factual content, the statement reads as conclusory, and the Court cannot draw a reasonable inference that Plaintiff actually engaged in a protected activity based on this statement.[37]

Therefore, the Court finds that Plaintiff's General Complaints are insufficient to suffice as a plausible protected activity. Thus, the Court next looks to the Williams Complaint to consider whether it suffices as a plausible protected activity.

b.    The Williams Complaint

Plaintiff alleges that in February 2017 she complained to union representative Williams about differential treatment between herself and another dispatcher. Plaintiff asserts this complaint was a protected activity. Defendant does not challenge whether the substance of the Williams Complaint suffices as a protected activity. Instead, Defendant argues that the Williams Complaint cannot serve as a protected activity because Plaintiff fails to allege that Williams was formally designated to receive complaints of discrimination on behalf of the BPU. Plaintiff contends that, within the motion to dismiss context, the Court cannot consider whether Williams was a designated recipient because this information is outside of the pleading.

Defendant frames this argument under the protected activity element when it is really a causation argument. Essentially, Defendant argues that the BPU did not know about Plaintiff's complaints because it was never notified through the proper channels. And after all, "[a]n employer cannot engage in unlawful retaliation if it does not know that the employee at least in part is

---

[36] This Order comes after Plaintiff amended her original Complaint in compliance with a previous order granting Defendant's motion for a more definite statement. Thus, the Court notes that Plaintiff has had sufficient opportunity to provide this information.

[37] *See Twombly*, 550 U.S. at 555.

engaging in protected activity."[38] Since the parties contest only the *means* of notification, and do not dispute the *content* of the Williams Complaint, the Court will assume without deciding that Plaintiff's Williams Complaint suffices as a plausible protected activity.

2.      *Adverse employment action*

Defendant does not directly contest whether Plaintiff adequately alleges an adverse employment action. Nonetheless, given the scant pleading provided by Plaintiff, the Court analyzes this element, for the sake of completeness, to assist with the retaliation analysis.

The Tenth Circuit liberally defines an adverse employment action within the context of retaliation claims.[39] Even so, an "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."[40] An adverse action includes "acts that carry 'a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.' Therefore, an action that significantly harms a plaintiff's future employment prospects may be considered an adverse action."[41]

Plaintiff fails to specify what adverse employment action the BPU took against her. However, since the Williams Complaint is the only legitimate protected activity asserted, the Court focuses on the two instances of employment action listed within it: (1) the Green harassment and (2) the January 2, 2021, denial of Plaintiff's request to work overtime.

---

[38] *Rangel v. Sanofi Aventis U.S., LLC*, 507 F. App'x 786, 792 (10th Cir. 2013) (further citations and quotations omitted).

[39] *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1172 (10th Cir. 2018); *Lucas v. Off. of Colo. State Pub. Def.*, 705 F. App'x 700, 704 (10th Cir. 2017) (noting that "adverse employment action" is defined more broadly for purposes of retaliation claims).

[40] *Payan*, 905 F.3d at 1172 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)).

[41] *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

Plaintiff implies that Green harassed her in retaliation for filing the Williams Complaint. Specifically, she claims that "after the complaint in late 2016/early 2017, Plaintiff was harassed by Stephen Green." As discussed previously, Green allegedly changed Plaintiff's parking spot and gave her a bad faith write-up. The Court does not believe that changing Plaintiff's parking spot sufficiently serves as an adverse employment action even under the Tenth Circuit's liberal definition. Such an action does not present itself as sufficiently harmful, humiliating, or damaging.

As for the write-up, even one based on a false allegation "must cause some change in employment status or concretely harm the plaintiff's prospects for future employment."[42] Plaintiff still works for the BPU and has not alleged that the write-up has negatively affected her applications for other positions. Furthermore, Plaintiff does not allege that she received any other write-ups; thus, she "fails to allege how this single incident report could have any bearing on [her] likelihood of being fired or could harm [her] future employment prospects."[43] As such, the Green harassment does not plausibly allege an adverse employment action.

Next, the Court considers the January 2, 2021, denial of Plaintiff's overtime request because this is the earliest dated conduct occurring after the Williams Complaint. As this Court noted in *Winn v. Health South-Mid America Rehab Hospital*, "denial of overtime benefits may be considered an adverse employment action."[44] The Court questions if Plaintiff's denial of overtime is as "materially adverse" as the denial in *Winn*, since, unlike the employee in that case, Plaintiff does not allege that she is dependent on overtime pay.[45] Still, viewing the facts in the light most favorable to Plaintiff, the denial of Plaintiff's overtime request plausibly pleads an adverse action.

---

[42] *Mitchell v. Zia Park, LLC*, 842 F. Supp. 2d 1316, 1329 (D.N.M. 2012) (citing *Annett*, 371 F.3d at 1239).

[43] *Ross v. Pentair Flow Techs., Inc.*, 2021 WL 4134317, at *8 (D. Kan. Sept. 10, 2021).

[44] 2013 WL 6196309, at *3 (D. Kan. Nov. 26, 2013).

[45] *Id.*

Accordingly, the Court must next consider whether a causal connection exists between Plaintiff's filing of the William's Complaint and the BPU's denial of her overtime requests.

       3.     *Causal connection*

Defendant asserts that Plaintiff does not plausibly allege a causal connection because too much time has passed between the protected activity and the adverse action. Thus, the Court must analyze whether the Williams Complaint caused the BPU to retaliate against Plaintiff by consequently denying her overtime requests.

"A causal connection is established where the plaintiff presents evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[46] This "causal connection is based upon the principles of but-for causation— requiring 'proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'"[47] Circumstantial evidence, which includes temporal proximity, a sequence of events, or suspicious timing, may be sufficient to support allegations of retaliation.[48] Thus, a pleading that alleges factual content such as a close temporal proximity passes the plausibility standard for alleging causation. However, when a pleading alleges retaliation that is remote in time from the protected conduct, the Court requires more to reasonably infer causation.[49] A period of two years between protected conduct and the alleged retaliatory act, by itself, does not support the causation element for sufficiently pleading a retaliation claim.[50]

---

[46] *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002) (internal quotations omitted).

[47] *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 667 (D. Kan. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

[48] *Sanders v. Bennett*, 2008 WL 754972, at *8 (D. Kan. Mar. 19, 2008); *Bell v. Pollack*, 2008 WL 652324, at *5 (D. Colo. Mar. 10, 2008).

[49] *Palmer v. Pentair*, 2019 WL 3239350, at *2 (D. Kan. July 18, 2019).

[50] *Halsey v. United Parcel Serv., Inc.*, 2015 WL 73685, at *7 (D. Kan. Jan. 6, 2015).

Plaintiff made the Williams Complaint in February 2017. However, the first overtime request recorded in Plaintiff's Amended Complaint after making the Williams Complaint was January 2, 2021. Thus, almost four years had passed between the date of the protected conduct and the date of the adverse action, which alone does not support a reasonable inference of retaliation.

Notably, Plaintiff alleges a slew of adverse employment actions without including relevant information such as the dates these actions occurred. The same applies to the alleged Green harassment, which Plaintiff also fails to date.[51] Certain civil actions, including all claims brought by Plaintiff in this case, may not commence later than four years after the cause of action accrues.[52] Because Plaintiff filed her complaint on January 5, 2024, both parties agree that the limitations period extends from January 5, 2020, to January 5, 2024. Even if the Court generously speculated that any of these allegations occurred within the statute of limitations, the time between the Williams Complaint and the adverse action would be over two years. Thus, a period of two years alone does not support a retaliation claim.[53]

Finally, nothing else within Plaintiff's allegations could reasonably infer retaliation. None of the dated conduct in the Amended Complaint occurs between the Williams Complaint and the January 2021 overtime denial, and the Court refuses to speculate that any of the undated allegations occurred during this time. Plaintiff does not identify the individual who denied her overtime in January 2021, nor does she allege that this unknown individual knew about the Williams Complaint. This Court previously granted a motion for a more definite statement, allowing

---

[51] Relatedly, Plaintiff does not allege that Stephen Green knew that Plaintiff made the Williams Complaint.

[52] *See* 28 U.S.C. § 1658; *see also Smith v. USD 480 Liberal*, 682 F. Supp. 3d 980, 987 (D. Kan. 2023) ("[D]iscriminatory actions . . . apply § 1658's four-year statute of limitations."); *see also Hernandez v. Data Sys. Int'l, Inc.*, 266 F. Supp. 2d 1285, 1296 (D. Kan. 2003) ("The Tenth Circuit has held that . . . claims arising under § 1981(b) are subject to the federal four-year statute of limitations established in 28 U.S.C. § 1658.").

[53] *Halsey*, 2015 WL 73685, at *7.

Plaintiff ample opportunity to amend her original Complaint to state a plausible retaliation claim. Nevertheless, the Court finds that the Amended Complaint lacks factual allegations to support a plausible connection from the Williams Complaint to the adverse action. Accordingly, because the Amended Complaint fails to plausibly allege causation, the Court dismisses Plaintiff's retaliation claim.

### C.   Race Discrimination

Based on the Court's reading of Defendant's arguments, Defendant moves to dismiss only Plaintiff's racial discrimination claims that are barred by the statute of limitations. As mentioned, Plaintiff's § 1981 discrimination claim runs from January 5, 2020, to January 5, 2024. Thus, the statute of limitations bars any allegations of discrimination before that period. However, Plaintiff maintains that she can recover for the conduct preceding the statute of limitations under the continuing violation doctrine.

The continuing violation doctrine applies "'when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that collectively constitute one unlawful act,' as opposed to 'conduct that is a discrete unlawful act.'"[54] "[A] continuing violation theory of discrimination is not permitted for claims against discrete acts of discrimination, such as termination, failure to promote, denial of transfer, or a refusal to hire."[55] Thus, discrete acts occurring outside of the statute of limitations cannot be saved by the continuing violation doctrine.

Plaintiff asserts that she applied for nine different positions within the BPU, but she was denied all of them. She claims that such denial constitutes race discrimination. Of the nine positions listed, Plaintiff only provides dates for three of them. She applied for the Water Quality

---

[54] *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 672 (10th Cir. 2016) (quoting *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009)).

[55] *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1184 (10th Cir. 2003) (citing *Morgan*, 536 U.S. at 114).

Technician position in 2014, the Scheduler and Lead Storeroom position in 2022, and the Dispatch position in 2023. It is unknown whether the remaining six positions were denied within or outside of the limitations period. Thus, the only known position directly contested is the 2014 Water Quality Technician.

Plaintiff claims that the Court should consider the 2014 position in determining whether she was discriminated against, analogizing position denial to an unequal pay claim under the Equal Pay Act. Defendant rebuts this assertion, contending that the Equal Pay Act is irrelevant and non-binding on discrimination claims.

In this case, the Court need not analyze the continuing violation doctrine's interplay with unequal pay claims because the Tenth Circuit has decided that unequal pay claims are not analogous to failure to promote claims.[56] Specifically, "Plaintiff . . . may not dress up her failure to promote claims as unequal pay claims to avoid timeliness issues."[57] The denial of the 2014 position and any other denials before the statutory time period are individually actionable claims of harassment. Thus, they are discrete acts that cannot be saved by the continuing violation doctrine.

As a result, Plaintiff's application denials for all the BPU positions occurring before January 5, 2020, are not saved by the continuing violations doctrine. Thus, this Court finds that any alleged discrimination occurring before the applicable statute of limitations used to support Plaintiff's race discrimination claim is time barred and dismissed from this action.

---

[56] *See Thomas v. Unified Gov't of Wyandotte Cnty.*, 2023 WL 9955820, at *3–5 (D. Kan. May 24, 2023) (holding that Plaintiff's denial of promotions over ten years were discrete acts that did not receive the continuing violation doctrine); *see also Kaster v. Safeco Ins. Co. of Am.*, 212 F. Supp. 2d 1264, 1268–69 (D. Kan. 2002), *aff'd*, 82 F. App'x 28 (10th Cir. 2003) (finding that the continuing violation doctrine did not apply to any promotion decisions occurring outside of the statutory time period).

[57] *Thomas*, 2023 WL 9955820, at *5 (D. Kan. May 24, 2023).

**IT IS THEREFORE ORDERED** that Defendant Unified Government of Wyandotte County's Partial Motion to Dismiss (Doc. 9) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 12th day of August, 2024.


ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE